IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SYCLESTA KAY NICKERSON                                                      PLAINTIFF

V                                      NO. 3:04CV00293 JWC

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                      DEFENDANT

## MEMORANDUM AND OPINION

Plaintiff, Syclesta Kay Nickerson, appeals the final decision of the Commissioner denying her claims for Disabled Widow's Benefits (DWB) and Supplemental Security Income (SSI).  An Administrative Law Judge (ALJ) held a hearing and rendered a decision on June 5, 2004, finding Plaintiff was not disabled.  That determination has become the final decision of the Commissioner.  The sole issue in controversy as to both claims is whether Plaintiff was under a disability within the meaning of the Social Security Act as of the time of the decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.  *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).  Provided that substantial evidence supports the Commissioner's decision, this Court may not reverse even if the record also provides substantial evidence to support a contrary outcome.  *Haley v.*

1

*Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

For the reasons stated below, this case must be remanded for further administrative proceedings.

Plaintiff was 51 years of age at the time of the ALJ's decision. She alleges disability due to high blood pressure, diabetes, high cholesterol, gynecological problems, carpal tunnel syndrome, back pain, anemia, loss of blood, depression and limited mental functioning. She has no past relevant work.

The record reveals that the hypertension, diabetes, cholesterol problem, anemia and loss of blood were either resolved or under control. There was no medical evidence documenting carpal tunnel syndrome. However, there was objective evidence of degenerative disc disease in Plaintiff's cervical and lumbar spine with stenosis. Plaintiff was also morbidly obese.

While the physical impairments must, of course, be part of the analysis, the really difficult problem presented by this case is the assessment of Plaintiff's alleged mental impairments and their effect on her ability to perform work. This issue requires remand for further evidence and consideration.

The Administrative Law Judge performed the five step analysis mandated by 20 C.F.R. §§ 404.1520 and 416.920. At steps one and two, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and that her medically determinable impairments were "severe."[1]  At step three, he found the impairments did not

---

[1] In the body of his decision, the ALJ found that Plaintiff's "severe" medically determinable impairments were: neuorforminal stenosis at C3-C4 and C4-C5 with neuorforminal stenosis and spurring at C6-C7, obesity, degenerative disc disease at L4-L5 and L5-S1 with disc herniation, hypertension (controlled), diabetes mellitus (non-insulin dependant), bereavement with dependant

meet or equal any listed impairment contained in Appendix 1, Subpart P, Regulations No. 4.  At step four, he performed a credibility analysis, finding Plaintiff's subjective complaints not entirely credible.  He determined that Plaintiff retained the residual functional capacity (RFC) to lift-carry and push-pull 20 pounds occasionally and 10 pounds frequently, with the ability to sit, stand and/or walk approximately 6 hours in an 8-hour workday; she had the mental capacity to perform work where interpersonal contact was routine, but superficial, where the tasks were not more complex than those learned by rote with few variables and requiring the use of individual judgment within limits.  He found that little supervision was required for routine tasks, but detailed supervision was required for non-routine tasks, and that Plaintiff was capable of performing unskilled, entry-level work activity consistent with the exertional and/or non-exertional capabilities.  He determined that Plaintiff had the RFC to perform a significant range of light work, but not the full range.  Because Plaintiff had no past relevant work, the ALJ moved to step five and utilized the testimony of a Vocational Expert, who stated in response to a hypothetical question that there were a significant number of jobs in the economy which Plaintiff could perform, such as housekeeper-cleaner-maid, food preparer and manufacturing grader-sorter. Therefore, the ALJ concluded Plaintiff was not disabled.

Plaintiff raises a number of points for reversal of this case.  Her argument that the ALJ's determination of RFC was flawed is dispositive and will affect resolution of other alleged errors.  Therefore, it will be discussed first.

---

personality disorder, and profound anemia secondary to menorrhagia (Tr. 15).

RFC Analysis

Plaintiff argues the RFC analysis is deficient in five ways, three of which involve the assessment of her mental problems. The mental aspect of her case is difficult, both as to the evaluation of her intelligence and evaluation of the severity of her personality disorders. The most definitive evidence on this issue is found in the reports of Stephen R. Harris, Ph.D. [2] (who examined Plaintiff on March 24, 2003) and Richard C. Maddock, Ph.D. [3] (who examined her on December 17, 2003). Each of these psychologists examined Plaintiff's mental status and evaluated her adaptive functioning. Dr. Harris felt that Plaintiff suffered from bereavement due to the recent death of her husband, dependent personality disorder and assessed her Global Assessment Functioning (GAF) as 48.[4] He considered her prognosis to be "poor to guarded." As to cognition, he felt that her adaptive functioning appeared to be lower than her intellectual ability. In addition to his examination report, Dr. Maddock completed a separate Medical Source Statement of Ability to do Work-Related Activities (Mental).[5] Dr. Maddock's reports are somewhat difficult for the lay person to assess. He felt Plaintiff was malingering on her intelligence testing and given to vastly overstating her subjective complaints and suffered from hypochondria. On the other hand,

---

[2] Tr. 316-320.

[3] Tr. 391-404.

[4] A GAF of 41 to 50 indicates severe symptoms or serious impairment in social, occupational or school functioning, such as the inability to keep a job. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (DSM-IV). The GAF scale is a 100-point scale used to report a clinician's judgment of an individual's overall level of psychological, social and occupational functioning. DSM-IV at 30-32.

[5] Tr. 403-404.

he also diagnosed Dementia NOS[6] and Personality Disorder NOS with Dependent and Histrionic Features, which would suggest true impairment of the ability to work. Further, in his statement of ability to do work-related activities, Dr. Maddock found that she had poor ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment and to interact with supervisors. He found she had no ability to deal with work stress, to function independently or to maintain attention/concentration. Further, he found Plaintiff had no ability to understand, remember and carry out complex job instructions or to understand, remember and carry out detailed but not complex instructions and found that she had only poor ability to understand, remember and carry out simple job instructions. As to social and personal adjustment, he determined that she had only fair ability to maintain her personal appearance, poor ability to behave in an emotionally stable manner and no ability to demonstrate reliability. Dr. Maddock added the following narrative statements:

> [She] is very limited in all spheres. Her husband recently died and she has never been able to function independently...If she was to work she would need continual and ongoing supervision. Because of a combination of a personality disorder and very low intellectual functioning, she cannot make reasonable, day to day, ordinary decisions and must rely on someone else to do her thinking for her (Tr. 403).
>
> She is hypochondriacal and is therefore a tremendous liability in the workplace. She would also be undependable, unreliable and could not be expected to come to work on time or even to come to work at all, on most days. She is also self-absorbed, which would also add to her being a liability in the workplace, since she would not be aware of ordinary hazards (Tr. 404).

Looking at the reports as a whole, it is difficult to determine whether Dr. Maddock is saying Plaintiff deliberately chooses not to behave in a way that would meet the demands of

---

[6] Not Otherwise Specified.

employment or whether she is truly unable to do so.

In addition to the reports of the two examining doctors, there are assessments in the record from non-examining state physicians stating that Plaintiff had moderate limitations in the ability to maintain attention and concentration for extended periods and the ability to complete a normal work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 200-201). They also marked her as moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors (Tr. 201).

If Plaintiff were able to make the adjustments listed in all the reports and simply chose not to do so, she should not be considered disabled. However, the assessments were done in terms of whether she had the <u>ability</u> to make the adjustments. If she truly had an <u>inability</u> to make them, they must be carefully considered in any RFC analysis.

Plaintiff faults the ALJ for not addressing the above evidence and not assessing her ability to work on a regular and continuing basis, eight hours per day, five days per week. The ALJ did discuss the full battery of psychological testing administered by Dr. Maddock. However, he found that because the examination revealed extreme malingering, the results could be "suspect in terms of accurately reflecting the claimant's overall functional capabilities" (Tr. 18). Unfortunately, the ALJ seems to have seized on the findings and comments regarding malingering and decided that Plaintiff simply chose not to exhibit behavior consistent with the ability to perform work. It was Dr. Maddock who discussed malingering, but also Dr. Maddock who placed the extreme limitations on Plaintiff's ability to make adjustments necessary for employment. It does not seem likely that he thought Plaintiff's malingering on certain tests invalidated those findings or he would not have made

them. Thus, the basis stated by the ALJ is not sufficient to reject the findings in the work ability assessment. At the very least, Dr. Maddock's findings in the statement of ability to perform work must be clarified on remand.

As a third basis for saying the RFC determination was inadequate, Plaintiff argues that the ALJ improperly failed to consider the effects of stress on her residual capacity to work, citing SSR 85-15. She is correct that the individual's response to the stress demands of work must be considered. As stated, Dr. Maddock found Plaintiff had no useful ability to deal with stress.

As the fourth defect in the RFC evaluation, Plaintiff points to the fact that the ALJ did not assess the effects of her degenerative disc disease, anxiety, dementia and obesity. The ALJ did consider her disc disease and anxiety, finding her complaints to be not entirely credible. He apparently accorded no weight to the diagnosis of dementia and did not factor in the effects of her obesity as required in 20 C.F.R. § 404, Subpart P, Appendix 2, § § 1.00F, 3.001, 4.00F. This must be corrected on remand.

Plaintiff's final argument regarding the RFC assessment is simply that no function-by-function analysis, with citations to the evidence was included. To the extent this is valid, it can be corrected on remand. In summary, this case must be remanded for a re-evaluation of Plaintiff's RFC in accordance with this opinion and order. Because of the questions raised by Dr. Maddock's reports, because the extent of Plaintiff's dementia is unclear, and because of the apparent invalidity of I.Q. test results, the record should be further developed on remand concerning Plaintiff's mental functioning and intelligence. The ALJ should also consider other errors alleged by Plaintiff to be sure all requirements for the five step process have been met.

<u>Remaining Points</u>

Plaintiff argues that she meets listing 12.05C of the listed impairments. At this point she has failed to carry her burden of proof on this issue. The ALJ had a legitimate reason for rejecting the I.Q. scores. On remand, a further effort to obtain valid scores would be helpful in connection with further psychological evaluation. As Plaintiff argues, there is support for some degree of limitation being in existence before the age of eighteen. With further information, a determination can be made whether she meets this listing or any other.

Plaintiff argues that the ALJ failed to follow proper procedures for mental evaluation. A Psychiatric Review Technique analysis was done. On remand, this may need re-evaluation and the ALJ should be careful to follow applicable regulations and document the steps taken.

Plaintiff argues the credibility analysis was lacking and that the ALJ erred in rejecting Plaintiff's testimony and that of her witness. The obtaining of additional medical information regarding Plaintiff's mental status and revisiting of the RFC analysis will necessarily require a re-evaluation of Plaintiff's credibility. The Court notes that there would be no error in the ALJ's discounting, to an appropriate extent, Plaintiff's subjective complaints. Dr. Maddock went to some length to discuss Plaintiff's tendencies to greatly exaggerate her ills and symptoms. Whether this is due to outright malingering or because of some emotional disorder does not matter. There is substantial evidence that Plaintiff does exaggerate her subjective complaints and the ALJ is certainly entitled to exercise his judgment in making the determination. Further, an ALJ is justified in giving reduced weight to or rejecting testimony of lay witnesses if he finds valid reason to do so.

Plaintiff also argues that the hypothetical question posed to the VE did not include all of her impairments. Following the re-evaluation of her mental capacity and RFC, the ALJ may find that further VE testimony will be necessary. It is well settled that a hypothetical question need only include those impairments supported by the record. A hypothetical question posed to a vocational expert must "capture the concrete consequences of [the] claimant's deficiencies." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). The ALJ may, however, exclude from the hypothetical question any alleged impairments that he has properly rejected as untrue or unsubstantiated. Id. A hypothetical question is properly phrased if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ. Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005).

## Conclusion

IT IS ORDERED THAT the Commissioner's decision is reversed and remanded for further proceedings in accord with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405 (g) and *Melkonyan v. Sullivan,* 501 U.S. 89 (1991).

IT IS SO ORDERED this 5th day of October, 2005.

_____
UNITED STATES MAGISTRATE JUDGE